# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **KIMBERLY M. MYERS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.2:04CV00069 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | | |

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Kimberly M. Myers filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the

Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Myers applied for benefits on November 21, 2001, alleging disability since May 15, 2001, and received a hearing before an administrative law judge ("ALJ") on October 17, 2002. By decision dated May 9, 2003, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

## *II. Facts.*

Myers is thirty-seven years old and has completed one year of college. She has worked as a certified nursing assistant, secretary, medical receptionist, and telemarketer. The plaintiff claims disability from fibromyalgia; pain and numbness in her extremities, neck, and back; breathing problems; and depression and anxiety. She has not engaged in substantial gainful activity since her onset date of May 15, 2001.

Based upon the evidence, the ALJ determined that the plaintiff does not have any impairment or impairments that significantly limit her ability to perform basic work-related activities, and therefore does not suffer from a severe impairment.

The plaintiff's medical history relevant to her onset date provides that a family care provider, Doo Yung Kwun, M.D. diagnosed symptoms consistent with fibromyalgia in February 1999. (R. at 205.) Dr. Kwun did not see the plaintiff again until 2001.

In June 2000, the plaintiff was injured at work while lifting. (R. at 190, 256-57.) She was diagnosed with moderate cervical disc herniation with no nerve compression (R. at 190), and shortly thereafter began drawing workers compensation benefits. Following hospitalization, the plaintiff saw Dr. Brinegar who diagnosed the plaintiff with a history of fibromyalgia and chronic articular pain, and reported that her physical therapy goals had been met. (R. at 192.) The plaintiff remained out of work for six months and then attempted an unsuccessful return, during which the plaintiff's alleged fibromyalgia symptoms caused her to collapse. (R. at 258.) The plaintiff remained off work for an additional four and a half months. (R. at 257.)

From July 4-7, 2000, the plaintiff was hospitalized for neck and back pain. (R. at 174.) An MRI indicated moderate cervical disc herniation with no spinal cord compression and normal thoracic and lumbar discs. (R. at 170-01.) While

hospitalized, the plaintiff was evaluated for arthralgias and myalgias by Dr. Razzaq, who found that the plaintiff's symptoms were suggestive of fibromyalgia. (R. at 177.) Dr. Koja, an additional treating physician, prescribed outpatient physical therapy. (R. at 175.)

On August 19-20, 2000, the plaintiff was hospitalized for breathing difficulties and diminished consciousness. (R. at 113.) Tests indicated no decrease in blood oxygen saturation, and at discharge, the plaintiff was again diagnosed with fibromyalgia. (R. at 115-16, 18.) On August 23, 2000, chest X rays were negative for acute cardiopulmonary disease. (R. at 112.)

In October and November 2001, Dr. Rasul saw the plaintiff three times, during which the plaintiff's chief complaint was low back pain, but also included depression and anxiety, seizures, angina, and migraine headaches, among others. (R. at 123-34.) A physical examination related to low back pain indicated tenderness in the back with range of motion and negative leg raising. (*Id.*) Dr. Rasul tested for but found no evidence of hypothyroidism (R. at 127-30), found that the seizures were likely medication-induced and that a CT head scan was normal (*Id.* ), and diagnosed low back pain secondary to degenerative joint disease and fibromyalgia. (R. at 134.) It was while the plaintiff was being treated by Dr. Rasul that she alleges she became disabled.

In February 2002, Ed Hunter, M.D., a physician with the Virginia Department of Rehabilitative Services, evaluated the plaintiff for purposes of a Social Security disability physical examination. (R. at 158.) The plaintiff's chief complaints at that time were debilitating anxiety which caused palpitations, tearfulness, diaphoresis, shakiness, discomfort in crowds, and forgetfulness, and debilitating depression which kept her from leaving the home and caused hopelessness, helplessness, and a suicide attempt. (*Id.*) The plaintiff at that time was not seeking any mental health treatment (*Id.*), nor did she complain of symptoms related to fibromyalgia, numbness, or pain in the neck or back. (*Id.*)

Dr. Hunter's physical examination indicated no abnormalities. The plaintiff exhibited normal range of motion in her back and no tenderness, spasm, or other ailment, and demonstrated negative straight leg raising to ninety degrees. (R. at 160.) He found no tremors or involuntary movements, and a normal gait. (R. at 160.) A February 14, 2002 lumbosacral X ray was normal. (R. at 162, 165) As to the plaintiff's mental state, Dr. Hunter found that the plaintiff was alert and oriented with intelligible speech, appropriate behavior, and intact memory. (R. at 160.)

Dr. Hunter diagnosed the plaintiff with a history of fibromyalgia and myofacial pain syndrome. Dr. Hunter concluded that the plaintiff suffered from no significant impairment in her ability to creep, crawl, crouch, climb, stoop, bend, lift, carry, travel,

speak, or hear. (R. at 161.) Dr. Hunter also concluded that, although the plaintiff reported psychological ailments, they were not sufficient to limit her ability to concentrate, memorize, socially persist, or interact, though he noted that a psychiatric referral may have been warranted before final diagnosis or decision. (*Id.*)

On March, 1, 2002, state agency medical consultants, Joseph Leizer, Ph.D., and Hugh Tenison, Ph.D., reviewed the plaintiff's medical record. (R. at 135-49.) They concluded that the plaintiff suffered from anxiety and depression, but that her impairment did not satisfy the diagnostic criteria. (R. at 140.) They found that the plaintiff was mildly limited in maintaining her concentration, persistence, or pace, but that she had no limitations in activities of daily living, maintaining social functions, and no extended episodes of decompensation. (R. at 145.)

The plaintiff's residual functional capacity was assessed by state agency physicians Richard M. Surrusco, M.D., and Frank M. Johnson, M.D., in March 2002. (R. at 149-57.) Specifically, the doctors found back pain resulting from herniation of a cervical disc, and sprain or strain of the lumbosacral spine. (R. at 151.) They recorded the plaintiff's primary diagnosis as fibromyalgia (R. at 149), and found that she was subject to no exertional limitations. (R. at 151.) Regarding postural limitations, they found that the plaintiff may stoop, kneel, crouch, or crawl occasionally, and may never climb or balance. (R. at 152.) They found no

manipulative, visual, or communicative limitations, but found that the plaintiff may not be exposed to environmental hazards. (R. at 153-54.) Further, the doctors found incredible the plaintiff's allegations of her pain and other symptoms. (R. at 151.)

As indicated above, family practitioner Doo Yung Kwun, M.D., diagnosed the plaintiff with fibromyalgia in 1999, noting that she reported "aching all over." (R. at 205.) Dr. Kwun saw the plaintiff again in April 2001, and then began seeing her more regularly in 2002. In February 2002, Dr. Kwun noted that the plaintiff suffered from fibromyalgia. (R. at 203.) Beginning in April 2002 and for three additional visits, Dr. Kwun noted only low back pain as the source of the plaintiff's ailments, rather than fibromyalgia. (R. at 198-201.) In August 2002, Dr. Kwun assessed the plaintiff's ability to do work-related activities, finding that she is limited to lifting or carrying less than ten pounds, standing and walking less than two hours per work day, sitting less than six hours per work day, and pushing and pulling in lower and upper extremities. (R. at 186-87.) Further, Dr. Kwun asserted that the plaintiff is unable to work due to pain and stiffness in the lower back and neck. (R. at 187.) Dr. Kwun does not mention fibromyalgia in his determination. (*Id.*)

*III. Analysis.*

The plaintiff asserts that the ALJ's determination is not supported by substantial evidence. In particular, she alleges that the ALJ erred in determining that the plaintiff does not suffer from severe impairments, and in giving improper weight to the plaintiff's treating physician. For the following reasons, I disagree.

In order to prove eligibility for disability benefits under the Act, a plaintiff must prove that she is "under a disability." 42 U.S.C.A. § 423(a)(1)(E) (West Supp. 2005). "Disability" is defined in the Act as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment" resulting in death or which has lasted or will last continually for twelve months. § 423(d)(1). The plaintiff must show an impairment, physical or mental, of such a severity that she cannot only not engage in her past relevant work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2).

*A.*

The plaintiff first alleges that the ALJ's determination that the plaintiff's alleged impairments were non-severe was not supported by substantial evidence. For the reasons set out below, I disagree.

First, the ALJ determined that despite the plaintiff's allegations of fibromyalgia, numbness in the extremities, and neck and back pain, her alleged impairments in this category were non-severe. In support of his finding, the ALJ pointed to X rays and MRIs showing only moderate disc herniation in the cervical spine, and normal results for the thoracic and lumbar spine; a CT scan also showed a negative impression. The plaintiff also demonstrated a range of motion in her back within normal limits, and evidenced normal sensation, strength, and reflexes. While the plaintiff's physician, Dr. Kwun, opined that the plaintiff was unable to work due to significant limitations, state agency medical consultants concluded that the plaintiff's residual functional capacity was limited at no levels. As further evidence, the ALJ pointed to the plaintiff's daily activities, which included shopping, cross stitching, crocheting, reading, watching television, and listening to the radio. Further, the plaintiff testified that she feeds her pets and cooks some meals for her family. Upon reviewing all aspects of the record as to the plaintiff's claims of fibromyalgia, pain, and numbness, I find that there was substantial medical and testimonial evidence in the record to support the ALJ's conclusion that the plaintiff's ailments were non-severe.

The ALJ also reasonably determined that the plaintiff's alleged breathing problems were non-severe. As noted by the ALJ, the lone medical record supporting

the plaintiff's allegations involved a single hospitalization for difficulty breathing. Tests during and after hospitalization, however, indicated that the plaintiff's oxygen saturation was within normal limits, and that there was no cardiopulmonary disease. Since that hospitalization, the plaintiff has continued to smoke a pack of cigarettes per day, and has been seen only for routine rhinitis or sinusitis. I find that the ALJ's determination that the plaintiff's breathing problems are non-severe is supported by substantial evidence in the record.

Finally, the ALJ made a reasonable determination regarding the plaintiff's alleged mental impairments. The plaintiff alleged that she suffers from debilitating depression and anxiety which prevent her from engaging in activities involving crowds of people, cause panic attacks and a suicide attempt, and diminish her concentration. However, cost has prevented plaintiff from seeking any mental health evaluation or treatment. Thus, the record is devoid of any objective evidence whatsoever substantiating the plaintiff's allegations of debilitating mental illness. Due to the lack of evidence supporting the plaintiff's claim, I find that the ALJ's determination that the plaintiff's alleged mental impairments are not severe is supported by substantial evidence.

*B.*

The plaintiff also alleges that the ALJ failed to give proper weight to the opinion of Dr. Doo Yung Kwun, the plaintiff's treating physician. For the reasons set out below, I disagree.

The ALJ was within his authority to discount the weight given to Dr. Kwun's medical opinion. In fact, the general rule provides that an ALJ's determination as to the weight assigned to a medical opinion will not be disturbed unless there is some indication of "specious inconsistencies," or lack of a good reason to afford weight to a particular opinion. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992); 20 C.F.R. § 404.1527 (2005). Dr. Kwun's assessment of disability is not dispositive; rather, disability determinations are reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (2005). Further, a medical opinion is afforded more weight the more it presents explanation, relevant objective evidence to support it, and consistency with the record as a whole. *See* 20 C.F.R. 1527((d)(3), (4) (2005). As the Fourth Circuit has set out, a physician's opinion not supported by clinical evidence should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Here, the ALJ offered several reasons explaining his decision not to entitle Dr. Kwun's opinion to controlling weight. (R. at 28.) The ALJ first cites the numerous

physician reports providing that the plaintiff suffers from no limitations on performing substantial gainful activity. (*Id.*) He cites Dr. Hunter's finding of no significant impairments to her mobile or communicative abilities, normal X rays and MRIs of her back and spine, and the fact that the plaintiff met her physical therapy goals as evidence inconsistent with Dr. Kwun's diagnosis of disability.

Further, while Dr. Kwun treated the plaintiff on and off for several years, there are no medical tests or objective signs to support his finding of disability. There are no results from medical tests or examinations, and no evidence that Dr. Kwun recommended that the plaintiff see a specialist for her condition. Dr. Kwun appears to have based his medical conclusions on nothing more than the plaintiff's own complaints. These, alone, are never sufficient to prove a claim for disability. 20 C.F.R. § 404.1529 (2005). Because there were inconsistencies between the diagnoses offered by Dr. Kwun and the other available medical evidence, the ALJ properly resolved the mismatch in favor of the weight of the evidence in the record indicating that the plaintiff did not suffer from severe impairments. I find that his resolution was supported by substantial evidence.

*IV.  Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

                                      DATED: November 10, 2005

                                      /s/ JAMES P. JONES
                                      Chief United States District Judge